UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA OSTALAZA,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,<br>Defendant. | Case No. CV 08-2183 PJW<br><br>MEMORANDUM OPINION AND ORDER |

I. INTRODUCTION

Before the Court is Plaintiff's appeal of a decision by Defendant Social Security Administration ("the Agency"), denying her application for Supplemental Security Income benefits ("SSI"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred in: (1) failing to follow the directives of Social Security Ruling 99-2p in evaluating Plaintiff's fibromyalgia; (2) failing to properly analyze the effect of Plaintiff's obesity on her other impairments, as required under SSR 02-1p; (3) improperly rejecting the treating physicians' opinions; (4) improperly discrediting the testimony of Plaintiff and of her daughter, Yolindita Abbott; and (5) failing to obtain testimony from a

vocational expert. (Joint Stip. at 16.[1]) For the reasons explained below, the Court concludes that the ALJ did err and that remand is warranted for further consideration.

II. BACKGROUND

On April 9, 2004, Plaintiff applied for SSI, claiming that she had been disabled since March 3, 1992, due to "osteoarthritis, knee, fibromyalgia, shortness of breath, ulcer, chipped tailbone, osteoporosis, depression, back, muscle spasm, tail bone, asthma." (Administrative Record ("AR") 49, 67-69.)[2] The Agency denied the application initially and on reconsideration. (AR 49-60.) Plaintiff then requested and was granted a hearing before an ALJ. (AR 34, 61.) On May 17, 2007, Plaintiff appeared at the hearing without counsel and testified. (AR 382-413.) On July 16, 2007, the ALJ issued a decision denying the application. (AR 15-27.) Following denial of review, (AR 4-6), Plaintiff filed the instant action.

---

[1] The Court has presented Plaintiff's claims in the order that it will address them herein. It is not the same order that Plaintiff presented them in the Joint Stipulation.

[2] Plaintiff first applied for SSI on June 29, 1998, but, after her application was denied by the Agency on October 28, 1999, she did not appeal. (AR 36-43.) Though the Agency applied a presumption of continuing non-disability to Plaintiff's second SSI application in 2004, the ALJ found that Plaintiff had successfully rebutted that presumption. (AR 18-19, 138.) The Court notes that the ALJ's finding was based, in part, on an alleged disability onset date of March 3, 2004, whereas the record shows that the onset date in Plaintiff's SSI application was amended, in handwriting, from March 2004 to March 1992. (AR 67.) Regardless, this discrepancy has no bearing on the issues raised in the current proceeding.

III. ANALYSIS

A. Application of Social Security Ruling 99-2p

Plaintiff contends that the ALJ failed to follow the directives of Social Security Ruling ("SSR") 99-2p. (Joint Stip. at 32-37.)[3] Plaintiff argues that, under SSR 99-2p, the ALJ could not reject the functional limitations opined by Plaintiff's treating physician, Dr. Bora Kim, without first recontacting Dr. Kim for "further clarification of the severity of her fibromyalgia and what functional restrictions would reasonably be expected to result therefrom[.]" (Joint Stip. at 35.)[4] For the following reasons, the Court disagrees.

SSR 99-2p, which ostensibly addresses the evaluation of cases involving chronic fatigue syndrome but also appears to be applicable to cases involving fibromyalgia, provides guidance for "developing and evaluating [disability] claims . . . on the basis of Chronic Fatigue Syndrome (CFS)[.]" The ruling sets forth a definition of CFS and provides guidelines to aid the adjudicator in determining whether CFS is a medically-determinable impairment at step two of the sequential disability analysis. The ruling also states that "[i]f the adjudicator finds that the evidence is inadequate to determine whether the individual is disabled . . . she must first recontact the

---

[3] The SSR's are not published in the federal register and "do not have the force of law." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 & n.6 (9th Cir. 1989). The Court does, however, defer to the Agency's interpretation of its regulations "unless they are plainly erroneous or inconsistent with [the Social Security] Act or regulations." *Id.* at 1457.

[4] Plaintiff also argues that the ALJ violated the precepts of SSR 99-2p more generally by failing to provide sufficient and legitimate grounds for rejecting the treating physician's opinion. (Joint Stip. at 36-37.) The Court separately addresses that contention below.

individual's treating or other medical source(s)" before arranging for a consultative examination to obtain additional information.

SSR 99-2p, and case authority, suggests that the most common issue in CFS or fibromyalgia cases is establishing whether a medically determinable impairment exists in the first place. *See*, *e.g.*, *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) (noting that "[f]ibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community", and that "to date there are no laboratory tests to confirm the diagnosis.") That is not the issue here.

In her decision, the ALJ accepted, without discussion, that Plaintiff's fibromyalgia was a severe impairment. (AR 21.) Indeed, the ALJ clearly rejected examining physician Leoni's opinion that Plaintiff had "no signs of fibromyalgia and no functional restrictions at all." (AR 24.) In determining her residual functional capacity, however, the ALJ rejected Plaintiff's subjective account of her limitations, some of which were allegedly caused by her fibromyalgia. (AR 23-26.)[5] Thus, the only issue raised specifically with respect to SSR 99-2p is whether it imposed a separate and additional obligation on the ALJ to recontact Dr. Kim or other physicians before determining that, while Plaintiff's fibromyalgia was a severe impairment, she would be able to work. Plaintiff has not shown that SSR 99-2p imposes such an obligation, and the Court finds that it does not.

The governing regulations provide that the Agency must recontact an applicant's treating physician where the evidence is inadequate to

[5] As discussed below, the ALJ also rejected Dr. Kim's opinion regarding Plaintiff's functional limitations.

make a disability determination or is ambiguous. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e), 416.927(c)(3).[6] SSR 99-2p incorporates those provisions, requiring the adjudicator to recontact medical sources if the evidence of CFS is inadequate, "in accordance with 20 C.F.R. 404.1512 and 416.912." Here, though she disagrees with the ALJ's interpretation of the evidence, Plaintiff fails to show that the evidence was inadequate or ambiguous.

Further, the ALJ did not reject Dr. Kim's opinion because it was ambiguous or inadequate. She rejected it because it was inconsistent with the "greater objective record" and Plaintiff's subjective complaints and because it was based on a single visit. (AR 24-25.) Because the records were neither inadequate or ambiguous, there was no need to recontact Dr. Kim under SSR 99-2p. For this reason, this claim does not warrant remand.

B. Application of Social Security Ruling 02-1p

In her next claim, Plaintiff contends that the ALJ failed to follow the directives of SSR 02-1p. Plaintiff argues that the ALJ

---

[6] 20 C.F.R. §§ 404.1512(e) and 416.912(e) provide:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination of a decision . . . (1) . . . We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 416.927(c)(3) provides that if the ALJ does not have sufficient evidence to make a disability determination, he will "try to obtain additional evidence" under the provisions just cited.

"failed to perform a full and complete analysis of the effects of" her obesity, as required by SSR 02–01p, first, by failing to explain why her obesity was not medically equivalent to a listed impairment and, second, by failing to specifically address the effect of her obesity on her functional limitations. (Joint Stip. at 42-44.) For the following reasons, this claim does not warrant remand, either.

SSR 02-01p directs the adjudicator to consider a claimant's obesity in determining whether the claimant has a medically determinable impairment; whether that impairment is severe; whether the impairments meets a listing; and whether the impairment prevents the claimant from doing past relevant work or any other work. This ruling also provides that "[w]e may also find that obesity, by itself, is medically equivalent to a listed impairment . . . [and] [w]e will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." SSR 02-01p. The ruling cautions, however, that "we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." SSR 02-1p.

Here, the ALJ found that Plaintiff's obesity was a severe impairment. (AR 21.) The ALJ also found, without further discussion, that none of Plaintiff's impairments met or equaled a listed impairment. (AR 21.) The ALJ then determined that Plaintiff had the residual functional capacity to perform a "full range of light work,"

but "[a]s a result of her obesity and knee problems, she cannot climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl." (AR 21-22.) In reaching this determination, the ALJ rejected the full extent of Plaintiff's subjective complaints. With respect to Plaintiff's obesity, the ALJ stated that, "[w]hile [it] could impact her back and knee pain, she continues to receive only conservative care for those problems, as she has for the last fifteen years, with the exception of right knee surgery in August, 2006." (AR 23.)

Plaintiff has not shown how the ALJ failed to comply with SSR 02-01p. Though the ALJ did not provide an explanation as to why Plaintiff's impairments did not combine to equal a listed impairment, SSR 02-01p does not require her to do so. Moreover, where, as here, Plaintiff offered no theory as to how her obesity, which the ALJ found did not impact her other physical impairments, combined with those other impairments to equal a listed impairment, the ALJ's failure to consider the "combined" effect of the impairments was not error. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001)(finding no error where claimant "offered no theory, plausible or otherwise, as to how his [impairments] combined to equal a listed impairment[.]"). Likewise, because the ALJ found that Plaintiff's obesity was a severe impairment, and specifically determined that it would restrict her ability to climb, balance, stoop, kneel, crouch, and crawl, Plaintiff has failed to show that the ALJ ignored the directives of SSR 02-01p in determining her residual functional capacity. For these reasons, the Court finds that this claim is without merit.

C. Rejection of Treating Physician's Opinion

Plaintiff next contends that the ALJ improperly rejected the opinion of her treating physician, Dr. Bora Kim, who opined on a functional capacity evaluation form that Plaintiff would be severely impaired in her ability to work. (Joint Stip. at 46-49.) For the following reasons, the Court concludes that the ALJ did not provide an adequate justification for rejecting Dr. Kim's opinion.

Dr. Kim treated Plaintiff from March 2003 until November 2004. (AR 203-23.) On March 4, 2004, Dr. Kim diagnosed Plaintiff with fibromyalgia and prescribed Pamelor, an antidepressant.[7] (AR 222.) On March 18, 2003, Plaintiff complained of chronic pain "all over." (AR 223.) In the same progress record, Dr. Kim noted that Plaintiff "reports she's applying for disability." (AR 222.) Dr. Kim referred to fibromyalgia again on April 1 and 29, 2004, and mentioned Plaintiff's complaints of chronic pain with muscle spasms. (AR 220, 221.)

On June 18, 2004, Dr. Kim stated that Plaintiff had come in with her daughter, who reported that her mother was in "constant pain, [complaining of] muscle spasms at night, and can't sleep at night." (AR 219.) Dr. Kim also stated, however, that "[Plaintiff] is really here to have disability paperwork filled out." (AR 219.) That same day, Dr. Kim completed a "Medical Source Statement - Physical," in which she indicated that Plaintiff could lift no more than ten pounds occasionally; stand or walk no more than two hours in an eight-hour workday; sit no more than six hours in an eight-hour workday; and could never climb, stoop, kneel, crouch, or crawl, and only

---

[7] *See* www.drugs.com/mtm/pamelor.html.

occasionally balance. (AR 253-54.) Dr. Kim described the following basis for these limitations: "[Plaintiff] has morbid obesity, previously [diagnosed with] fibromyalgia, has chronic low back pain and osteoarthritis of lumbar spine, chronic knee pain, [illegible], [history of] anxiety and depression - all of these conditions contribute to [Plaintiff]'s impairment to do work." (AR 253.)

In her decision, the ALJ noted that Dr. Kim's June 18, 2004 functional capacity assessment "place[d] [Plaintiff] at a less than sedentary exertion level." (AR 24.) But she gave this assessment less weight because "it is inconsistent with the greater objective record and because Dr. Kim said he relied on [Plaintiff]'s reported subjective complaints such as requiring alternate sitting and standing every five minutes, which is not an objective measure of her functional capacity and because this assessment was based on a one-time visit with [Plaintiff]." (AR 24-25.) The ALJ also rejected Dr. Kim's opinion regarding Plaintiff's mental impairments because Dr. Kim "is not a mental health practitioner, and both the State agency's reviewing psychologist and psychiatrist found [Plaintiff]'s mental impairments were non-severe." (AR 25.)

The ALJ also rejected Dr. Kim's October 4, 2005 opinion that Plaintiff had been unable to work since 1992 due to a history of chronic back, neck, and joint pains secondary to osteoarthritis, conditions which Dr. Kim stated were permanent. (AR 301.) The ALJ noted that Dr. Kim also stated that Plaintiff's condition had improved and that her chronic pain was controlled with Celebrex, which contradicted his opinion that she was permanently disabled. (AR 25.)

"By rule, the [Agency] favors the opinion of a treating physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). In order to reject a treating physician's opinion in favor of a non-treating physician's opinion, the ALJ must set forth specific and legitimate reasons. *Id.* at 632; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ offered three reasons for rejecting Dr. Kim's physical limitations assessment. First, she found that the opinion was "inconsistent with the greater objective record." (AR 25.) The ALJ did not explain what she meant by "the greater objective record," and failed to specify what part of that record was in conflict with Dr. Kim's assessment.[8] This generalized finding is not enough to support the ALJ's rejection of the opinion. *See Regennitter v. Comm'r, Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). Further, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant." *Rogers v. Comm'r, Soc. Sec. Admin.*, 486 F.3d 234, 245 (6th Cir. 2007); *see also Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia symptoms are "entirely subjective"). Thus, this justification was not a legitimate reason for discounting the opinion.

---

[8] To the extent the ALJ intended to contrast examiner Leoni's findings that Plaintiff had no functional limitations at all with the more restrictive findings of Dr. Kim, such a rationale would not be legitimate. The ALJ expressly discounted Dr. Leoni's opinion because "the greater objective medical record fails to support a finding that [Plaintiff] has no signs of fibromyalgia and no functional restrictions at all." (AR 24.) The ALJ thus appeared to accept that Plaintiff had *some* restrictions as a result of her fibromyalgia, yet, as further discussed below, she did not include any in her residual functional capacity assessment.

Second, the ALJ rejected Dr. Kim's opinion on the ground that it was premised on Plaintiff's subjective complaints, rather than on "an objective measure of her functional capacity." (AR 25.) Generally speaking, the ALJ is entitled to reject a treating physician's opinion for this reason. *See, e.g.*, *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (affirming ALJ's rejection of treating physicians' unsupported and inconsistent opinions that relied on claimant's own testimony). But, in the world of fibromyalgia, the story is slightly different. In such cases, a treating doctor's opinion may be based purely on a patient's subjective complaints. *See, e.g.*, *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing where the "ALJ effectively required 'objective' evidence for a disease [i.e., fibromyalgia] that eludes such measurement."); *Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1260 (D. Kan. 2000) (finding that ALJ improperly rejected treating doctors' opinions regarding claimant's functional limitations based on the "lack of objective medical evidence and the doctors' reliance on [the claimant]'s subjective complaints" where there was ample evidence that claimant suffered from fibromyalgia). Thus, this justification, too, was not a legitimate basis standing on its own to reject the treating doctor's opinion.

The ALJ's third reason for discounting Dr. Kim's assessment was that it was based on "a one-time visit with claimant." (AR 25.) Though literally true, in the sense that *any* individual assessment is based on "a one-time visit," the ALJ apparently failed to give any weight to Dr. Kim's treatment history with Plaintiff, which the record

shows began in March 2003 and continued to at least June 2004, when he filled out the form that contained his opinion. Thus, this rationale is not supported by substantial evidence in the record.[9]

In sum, the ALJ did not provide specific and legitimate reasons, supported by substantial evidence in the record, to reject the opinion of Plaintiff's treating doctor that her fibromyalgia resulted in significant limitations on her ability to work. Remand is appropriate to allow the ALJ the opportunity to discuss the medical evidence regarding Plaintiff's fibromyalgia in accordance with the proper legal standards.

D. Testimony of Plaintiff and Plaintiff's Daughter

Plaintiff contends that the ALJ failed to provide specific, clear, and convincing reasons for rejecting her testimony regarding the pain and other symptoms she claims to experience. (Joint Stip. at 49-55.) Moreover, she contends that the ALJ failed to provide legitimate reasons for rejecting the testimony of her daughter, Yolindita Abbott. (Joint Stip. at 55-56.) For the following reasons, the Court agrees.

ALJ's are tasked with judging the credibility of witnesses. In making a credibility determination, an ALJ may take into account

---

[9] Furthermore, the Court notes that the ALJ did not appear to assign any particular weight to the opinion of rheumatologist Dr. Alan Peter--who diagnosed Plaintiff with fibromyalgia on several occasions in 2006, and noted specific areas of tenderness–-merely recounting his findings without adopting or rejecting them. (AR 25, 346, 351-54.) "Rheumatology is the relevant specialty for fibromyalgia[,]" *Benecke v. Barnhart*, 379 F.3d 587, 594 n.4 (9th Cir. 2004), and the opinion of a specialist about medical issues related to his specialization is given more weight than the opinion of a non-specialist. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 416.927(d)(5). On remand, the ALJ should indicate the weight to be given Dr. Peter's opinion.

ordinary credibility evaluation techniques. *Smolen,* 80 F.3d at 1284. Where, as here, the ALJ accepted that the claimant's medically determinable impairments could reasonably be expected to produce the symptoms alleged and found no evidence of malingering, (AR 23), the ALJ could only reject her testimony for specific, clear, and convincing reasons. *Smolen*, 80 F.3d at 1283-84.

Here, the ALJ noted that Plaintiff allegedly could "do very little during an average day. She spends much of her time either in bed or in a recliner. She frequently cries due to pain. Her medications allegedly help 'a little,' but do not provide long-term pain relief." (AR 23.) The ALJ also noted that Plaintiff claims to need help bathing and dressing, wears adult diapers because she is incontinent, "cannot lift anything due to pain, weakness, and swelling in her hands," has difficulty climbing stairs, and cannot sit or stand for longer than two minutes. (AR 23.) Additionally, she found that Plaintiff alleges she wakes up throughout the night, coughs all of the time, finds it hard to breathe, and experiences daily headaches. (AR 23.)

The ALJ offered a long list of reasons why Plaintiff was not credible: (1) Plaintiff received only "conservative care" for her back and knee pain, with the exception of her knee surgery in 2006; (2) no evidence supported Plaintiff's allegations regarding the limited use of her hands and hand X-rays taken in April 2006 were negative; (3) Plaintiff's medications did not appear to cause drowsiness; (4) no evidence of weakness or muscle wasting supported Plaintiff's allegation that she was limited to sedentary activity; (5) Dr. Kim reported that Celebrex improved Plaintiff's arthritis symptoms; (6) there was no evidence of emergency room or hospital treatment for any

breathing impairment, and Plaintiff continues to smoke half a pack of cigarettes a day; and (7) Plaintiff's blood sugar is controlled, and there is no evidence of any impairments caused by diabetes. (AR 23-24.) The Court finds that these reasons are largely adequate with respect to the specific ailments addressed. Thus, for example, the record supports the ALJ's findings that Plaintiff's arthritis and diabetes appear to be controlled, that hand x-rays were negative, and that her breathing impairment does not result in functional limitations. (AR 270, 296, 307, 318-19). And there is no objective medical evidence to establish that Plaintiff's incontinence or headaches cause any specific limitations. Nevertheless, the ALJ's credibility analysis is inadequate in two respects.

First, the ALJ's finding that Plaintiff had received only conservative care for her back and knee pain is belied by her knee surgery in August 2006, surgery that the ALJ acknowledged but seemingly gave no weight to. (AR 23, 362-69.) In addition, the ALJ did not consider Plaintiff's testimony that she was denied Medi-Cal insurance in 2004 and, in fact, married in order to get medical insurance. (AR 392-93.) She also testified that in 2006 and 2007 her Blue Cross doctors "moved to Kaiser." (AR 393.) The ALJ was required to address this testimony before discounting her credibility on the ground that she had received only conservative care. *See Orn*, 495 F.3d at 638 (reaffirming that "disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.") (quotation omitted); *see also* SSR 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations

that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment.”)

Second, the ALJ did not discuss Plaintiff’s fibromyalgia and the extent to which it caused her complaints of generalized pain, weakness, and postural limitations. As noted above, the ALJ specifically rejected examiner Leoni’s opinion that Plaintiff had no signs of fibromyalgia and no functional restrictions at all, and accepted that Plaintiff’s fibromyalgia was a severe impairment. (AR 24.) Moreover, as just discussed, the ALJ failed to offer specific and legitimate reasons for rejecting Dr. Kim’s functional assessment, and failed to either adopt or reject the opinion of specialist Dr. Peter. In short, the ALJ accepted that Plaintiff suffers from fibromyalgia, but implicitly found that the condition would impose no additional functional limitations above and beyond those imposed by Plaintiff’s physical impairments and obesity.

In the end, the Court is left to guess the extent to which the ALJ considered how Plaintiff’s fibromyalgia might cause any of the symptoms she alleges. For this reason, the Court finds that the credibility analysis is inadequate and remand is required for further clarification. *See*, *e.g.*, *Glenn*, 102 F. Supp. 2d at 1258-59 (holding that ALJ’s credibility determination was not supported by record where ALJ accepted that claimant suffered from fibromyalgia and where her complaints of pain and fatigue were supported by treating physicians); *see also Rogers*, 486 F.3d at 248 (“[G]iven the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant’s statements is particularly important.”).

The ALJ also failed to properly address the testimony of Plaintiff's daughter Yolindita Abbott. At the administrative hearing, Ms. Abbott testified that her mother "really can't do nothing during the day. She's in pain constantly. She's from the bed to the recliner. . . . She's always in pain. She's crying. And the medications, it helps for a little bit, but it's not helping her long-term and that's a bad thing." (AR 408.) Ms. Abbott also testified that Plaintiff "has to keep her legs up, but she can't lay flat on the bed because it hurts her back. She wakes up with sweats." (AR 408.) In addition to her testimony at the hearing, Ms. Abbott submitted written reports documenting Plaintiff's difficulties. (AR 99-107, 114-30.)

An ALJ is required to consider the testimony of a lay witness. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). This requirement applies equally to written "testimony." *See*, *e.g.*, *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) (holding that ALJ must give germane reasons to discount written testimony and affidavits of lay witnesses). Failure to consider such testimony constitutes error. *Stout*, 454 F.3d at 1055-56.

In her decision, the ALJ specifically discounted the written reports that Ms. Abbott had submitted in support of Plaintiff's application, finding that "their perceptions of [Plaintiff]'s limitations are adversely influenced by that very concern for [her] well being. Close relatives most often accept, without critical and objective examination, the subjective complaints of loved ones." (AR 26.) The ALJ did not address Ms. Abbott's hearing testimony.

Even were the Court to construe the ALJ's comments regarding Ms. Abbott's written reports as applying equally to her hearing testimony,

it would still find that the ALJ erred in discounting the testimony order remand. It is not proper to discount a relative's testimony based solely on the fact that the testimony came from a relative, who might be inclined to see things the claimant's way. *See, e.g., Regennitter,* 166 F.3d at 1298 (explaining that "the fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony. To the contrary, testimony from lay witnesses who see the claimant everyday is of particular value . . . such lay witnesses will often be family members.") (quoting *Smolen*, 80 F.3d at 1289); *Johnson v. Astrue*, 2008 WL 4553141, at *6 (C.D. Cal. Oct. 9, 2008) (noting that "the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship."). Because the ALJ's justification for rejecting Ms. Abbott's testimony was inadequate, her testimony must be reconsidered on remand.

E. Failure to Obtain Vocational Expert Testimony

Finally, Plaintiff contends that her non-exertional limitations precluded the ALJ from relying exclusively on the Medical-Vocational Guidelines (the "Grids") at step five of the sequential disability analysis and required the ALJ to obtain the testimony of a vocational expert. (Joint Stip. at 16-25.) This claim is contingent on Plaintiff's claims that the ALJ failed to properly consider the medical evidence and the testimony of Plaintiff and her daughter, as discussed above. In light of the Court's conclusion that the matter must be remanded for further consideration of the treating doctors' opinions and the testimony of Plaintiff and her daughter, the ALJ may well need to make a new residual functional capacity analysis to determine the extent to which Plaintiff's fibromyalgia and her alleged

pain and fatigue stemming from it limit her ability to work, and then conduct a new step-five analysis.

To provide additional guidance on remand, however, the Court notes that the postural limitations, as found by the ALJ in her decision, and the mild and moderate mental limitations assessed by the examining psychologist, (AR 22, 251), would not necessarily preclude use of the Grids, nor would the impairments that Plaintiff testified to but which lacked support in the record. *See* SSR 85-15 (noting that "there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base," such as climbing and crawling); *Hoopai v. Astrue*, 499 F.3d 1071, 1077 (9th Cir. 2007) (holding that step-two findings that claimant was moderately limited in several areas of mental functioning did not preclude ALJ's reliance on Grids without use of vocational expert); *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999) (holding that "the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids.").

F. Plaintiff's Request For An Award Of Benefits

Plaintiff seeks reversal for an award of benefits. (Joint Stip. at 62). The decision whether to remand for further proceedings is within this Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1177-1178 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, the Court can remand with instructions to award benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). Where, as here, however, there are outstanding issues that must be resolved before a determination of disability can be made and it is

not clear from the record that Plaintiff is disabled, remand for further proceedings is appropriate. *Id.* at 1180-81; *see also Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003). Because the record remains undeveloped with respect to the treating doctors' opinions and the testimony of Plaintiff and her daughter, the Court is not in a position to say with certainty whether the medical and other evidence of record compels the conclusion that Plaintiff is or is not disabled under the regulations. Thus, remand for further proceedings is appropriate.

For these reasons, the Agency's decision is reversed and the case is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

DATED: September 30 , 2009.

Patrick J. Walsh

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\OSTALAZA, L 2183\Memo_Opinion.wpd